UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARP MEMORIAL HOSPITAL, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>REGENCE BLUECROSS BLUESHIELD OF UTAH, a Utah corporation; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No.: 16cv2493 JM (RNB)<br><br>**ORDER** |

# BACKGROUND

## I. Blue Shield Agreement

Around October 1, 2985, Plaintiff Sharp Memorial Hospital ("Sharp") entered into an agreement ("Blue Shield Agreement") with Blue Shield of California to provide services at discounted rates to specified members and "Other Payors." (Doc. No. 5 ("FAC") ¶ 19.) Under the Blue Shield Agreement, Sharp agreed to provide healthcare services at a discounted rate to Defendant Regence BlueCross BlueShield of Utah ("Regence") as an "Other Payor." (Id. ¶ 22.) The Blue Shield Agreement, with amendments, remained in effect through the time of Patient's treatment at Sharp. See Blue Shield Agreement ("BSA") (2013 amendment).

The relevant portions of the Blue Shield Agreement are as follows:

- "The Knox-Keene Health Care Service Plan Act and regulations thereunder are applicable to Blue Shield and this Agreement." BSA (1985).
- "This Agreement is governed by the laws of the State of California." BSA § 16.1 (1985).
- "Hospital is entitled to payment for authorized <u>covered services</u> at the rates stated herein for services actually rendered to Blue Shield subscribers." BSA § 6.2 (1985) (emphasis added).
- "Hospital is not precluded from seeking reimbursement from other third party payors . . ." BSA § 6.3 (1985).
- "**Emergency Services**: are Covered Services required to address an unexpected medical condition . . ." BSA § 2.1 (2008 amendment).
- "**Hospital Services**: are those Covered Services which Hospital is licensed to provide." BSA § 2.2(a) (2008 amendment).
- "**Inpatient Services**: are Hospital Services provided to an Inpatient . . ." BSA § 2.2(b) (2008 amendment).
- "**Covered Services**: are Medically Necessary health care services, supplies and drugs that a Member is entitled to receive <u>pursuant to the Health Services Contract</u> and/or Evidence of Coverage applicable to the Member." BSA § 2.13 (2008 amendment) (emphasis added).
- "**Health Services Contract**: is the group or individual contract that sets for the Benefit Program and the Covered Services to which a Member is entitled . . ." BSA § 2.15 (2008 amendment).
- "**Member**: is an individual who is eligible for and enrolled in . . . a health benefit plan of an Other Payor (as defined herein)." BSA § 2.17 (2008 amendment).
- "**Other Payor(s)**: are employers, insurance companies, associations, health and welfare trusts, and other organizations <u>with which Blue Shield contracts</u> to provide

2

administrative services for plans provided by those entities that are not underwritten by Blue Shield (including both local and Blue Cross/Blue Shield National Accounts Programs), <u>as well as other entities to which Blue Shield has extended this Agreement pursuant</u> to managed care arrangements established by Blue Shield subsidiaries, <u>or by persons or entities using the network Blue Shield has established pursuant to agreements</u> with CareTrust Networks and Blue Shield of California Life & Health Insurance Company." BSA § 2.18 (2008 amendment) (emphasis added).

- "If proceedings are necessary to enforce this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees in addition to any other relief it may obtain." BSA § 17.2 (1985).

## II. Regence's Policy

The Patient's health insurance policy through Regence provides coverage for emergency room services.

**EMERGENCY ROOM (INCLUDING PROFESSIONAL CHARGES)**

| Provider: In-Network | Provider: Out-of-Network |
|---|---|
| **Payment:** After $250 Copayment per visit and Deductible, We pay 90% and You pay 10% of the Allowed Amount. Your 10% payment will be applied toward the Out-of-Pocket Maximum. This Copayment applies to the facility charge, whether or not You have met the Deductible. However, this Copayment is waived when You are admitted directly from the emergency room to the Hospital or any other facility on an inpatient basis. | **Payment:** After $250 Copayment per visit and In-Network Deductible, We pay 90% of the Allowed Amount and You pay balance of billed charges.<br>Your 10% payment of the Allowed Amount will be applied toward the In-Network Out-of-Pocket Maximum. This Copayment applies to the facility charge, whether or not You have met the Deductible. However, this Copayment is waived when You are admitted directly from the emergency room to the Hospital or any other facility on an inpatient basis. |

We cover emergency room services and supplies, including outpatient charges for patient observation and medical screening exams that are required for the stabilization of a patient experiencing an Emergency Medical Condition. Emergency room services do not need to be pre-authorized. See the Hospital Care benefit in this Medical Benefits Section for coverage of inpatient Hospital admissions.

(Doc. No. 29-4 at 32; Regence Plan at 8.)

However, the plan specifically excludes services related to obesity or weight reduction/control, and any complications arising therefrom. One of the "exclusion examples" provided in the Patient's plan with Regence notes that "complications relating to services and supplies for, or in connection with, gastric or intestinal bypass, gastric

stapling, or other similar surgical procedure to facilitate weight loss . . . or any direct complications or consequences thereof" are not covered.

> **SPECIFIC EXCLUSIONS**
> We will not provide benefits for any of the following conditions, treatments, services, supplies or accommodations, **including any direct complications or consequences that arise from them.** However, these exclusions will not apply with regard to an otherwise Covered Service for: 1) an Injury, if the Injury results from an act of domestic violence or a medical condition (including physical and mental) and regardless of whether such condition was diagnosed before the Injury, as required by federal law; or 2) a preventive service as specified under the Preventive Care and Immunizations benefit in the Medical Benefits Section or in the Prescription Medication Benefits Section.
>
> * * *
>
> **Obesity or Weight Reduction/Control**
> Except as provided under the Nutritional Counseling benefit in this Booklet, We do not cover medical treatment, medication, surgical treatment (including reversals), programs or supplies that are intended to result in or relate to weight reduction, regardless of diagnosis or psychological conditions.

(Doc. No. 29-4 at 49, 51; Regence Plan at 25, 27 (emphasis in original).)

Regence's plan also includes an explanation of its relationship to the Blue Cross and Blue Shield Association.

> **RELATIONSHIP TO BLUE CROSS AND BLUE SHIELD ASSOCIATION**
> The Group on behalf of itself and its Members expressly acknowledges its understanding that the Contract constitutes an agreement solely between the Group and Regence BlueCross BlueShield of Utah, which is an independent corporation operating under a license from the Blue Cross and Blue Shield Association, an association of independent Blue Cross and Blue Shield Plans (the Association), permitting Us to use the Blue Cross and Blue Shield Service Marks in the state of Utah and that We are not contracting as the agent of the Association. The Group on behalf of itself and its Members further acknowledges and agrees that it has not entered into the Contract based upon representations by any person or entity other than Regence BlueCross BlueShield of Utah and that no person or entity other than Regence BlueCross BlueShield of Utah will be held accountable or liable to the Group or the Members for any of Our obligations to the Group or the Members created under the Contract. This paragraph will not create any additional obligations whatsoever on the part of Regence BlueCross BlueShield of Utah other than those obligations created under other provisions of the Contract.

(Doc. No. 29-4 at 80; Regence Plan at 56 (emphasis added).)

Lastly, the Patient's health plan through Regence contains the following choice of law provision:

> **GOVERNING LAW AND DISCRETIONARY LANGUAGE**
> **The Contract will be governed by and construed in accordance with the laws of the United States of America and by the laws of the State of Utah without regard to its conflict of law rules. . . .**

(Doc. No. 29-4 at 79; Regence Plan at 55 (emphasis in original).)

## III. Hospital Services That Gave Rise to This Action

On August 28, 2014, five days after undergoing a gastric sleeve procedure in Mexico, the Patient presented to the emergency room at Sharp with "[r]espiratory failure, most likely due to combination of pulmonary hypertension, obstructive sleep apnea, and pneumonia." (FAC ¶¶ 34, 36.) The following day, because Patient had insurance benefits through Regence, Sharp contacted Regence by telephone to request authorization for inpatient treatment. Based on the information provided, Regence authorized inpatient services for seven days. (Doc. Nos. 29-1 at 3, 32 at 4.)

On September 19, 2014, Sharp received a notice of denial from Regence informing Sharp that the services provided to Patient were excluded from its policy regarding obesity. (Doc. No. 32 at 5.) Sharp appealed this notice of denial. Patient remained hospitalized at Sharp until January 7, 2015. Sharp billed Regence through the Blue Shield Agreement for $1,031,932.00 for services provided to Patient. (FAC ¶¶ 39, 41–44.) On November 7, 2016, Sharp received $13,121.55, plus $3,310.95 in interest, as payment for the day Patient received care in the emergency room. (FAC ¶ 46; Doc. No. 32 at 6.)

## IV. Procedural History

On October 5, 2016, Sharp initiated this diversity action against Regence, claiming that Regence owes Sharp over $1 million for services rendered to Patient. (Doc. No. 1.) The original complaint made multiple references to the Patient's health care plan with Regence, and noted that "Patient executed an assignment of benefits on August 29, 2014 authorizing direct payment to Sharp of any insurance or reimbursement from third party payors . . ." (Doc. No. 1 ¶ 38.) In response, Regence filed a motion to dismiss, arguing Sharp's claims are completely preempted by ERISA. (Doc. No. 3.) The court denied Regence's motion as moot when Sharp filed the operative First Amended Complaint ("FAC"), which omitted any reference to the Patient's assignment of benefits to Sharp. (Doc. Nos. 5, 7.)

In the FAC, Sharp alleges six causes of action: (1) breach of contract—Blue Shield Agreement; (2) breach of implied-in-law contract; (3) breach of implied-in-fact contract;

(4) estoppel; (5) recovery of services rendered; and (6) declaratory relief. (Doc. No. 5.)

On April 19, 2018, Regence filed a motion for summary judgment on the basis that Sharp's claims are completely preempted by ERISA section 502(a). (Doc. No. 29.) Regence's argument relied almost entirely on the deposition testimony of Laurel Achenbach, who Sharp designated as the person most knowledgeable to testify as to the facts underlying some of Sharp's claims in the FAC. The court denied the motion. (Doc. No. 39.) Trial began on August 14, 2018. After Sharp presented its case-in-chief, Regence moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a).

## LEGAL STANDARDS

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> (A) resolve the issue against the party; and
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a). "Judgment as a matter of law is appropriate when the evidence presented at trial permits only one reasonable conclusion." Torres v. City of Los Angeles, 548 F.3d 1197, 1205 (9th Cir. 2008) (quoting Santos v. Gates, 287 F.3d 846, 851 (9th Cir. 2002)). "When reviewing the record as a whole, the court must draw all reasonable inferences in favor of the nonmoving party." Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1005 (9th Cir. 2004) (internal marks and citations omitted). "If conflicting inferences may be drawn from the facts, the case must go to the jury." LaLonde v. Cty. of Riverside, 204 F.3d 947, 959 (9th Cir. 2000).

## DISCUSSION

### I. Breach of Written Contract—Blue Shield Agreement

Sharp asserts that because Regence accepted the benefits of the Blue Shield Agreement, it is bound by its terms, including the obligation to pay for Sharp's services.

Regence argues its access to discounted hospital rates in the Blue Shield Agreement does not give rise to a breach of contract claim based on that provider agreement.

According to Regence, this same argument was "flatly rejected" by another district court in St. Vincent Med. Ctr. v. Mega Life & Health Ins. Co., 2012 WL 3238510 (C.D. Cal. July 24, 2012), aff'd, 585 F. App'x 417 (9th Cir. 2014). In St. Vincent, Plaintiff-Hospital brought suit against Defendant-Health Insurance Company alleging, inter alia, breach of written contract. The written contract underlying the claim was an agreement setting up discounted reimbursement rates between the Plaintiff-Hospital and First Health Group Corp. ("First Health"), who was not a party to the action. The discounted rates extended to "payors" who "contracted with First Health" to use Plaintiff-Hospital. St. Vincent Med. Ctr., 2012 WL 3238510, at *1. Defendant-Health Insurance Company entered into a separate contract with First Health to gain access to certain hospitals and physicians, such as Plaintiff-Hospital. In 2008, two patients insured by Defendant-Health Insurance Company presented to and received care at Plaintiff-Hospital. Defendant-Health Insurance Company denied coverage for each patient's expenses because the treatments received were excluded as pre-existing conditions. Id.

The district court found Plaintiff-Hospital's breach of written contract claim failed because no written contract existed between the Plaintiff-Hospital and Defendant-Health Insurance Company. St. Vincent Med. Ctr., 2012 WL 3238510, at *3. Like Sharp, Plaintiff-Hospital argued that Defendant-Health Insurance Company took the benefit of the contract with First Health, and thus could not avoid the burden of that same contract. However, the court disagreed, once again distinguishing between the contract between Plaintiff-Hospital and First Health, to which Defendant-Health Insurance Company was not a party, and Defendant-Health Insurance Company's contract with First Health.

On appeal, the Ninth Circuit affirmed in an unpublished decision. St. Vincent Med. Ctr. v. Mega Life & Health Ins. Co., 585 F. App'x 417 (9th Cir. 2014). The Ninth Circuit noted that the contract First Health and Defendant-Health Insurance Company contained a disclaimer of third party rights. 585 F. App'x at 418. Here, there is no express contract between Blue Shield of California and Regence. Rather, both entities are independent licensees of the Blue Cross and Blue Shield Association. As such, they are required to

participate in the BlueCard Program, which allows Regence the ability to access the discounted rates in the Blue Shield Agreement as an "Other Payor." The Patient's benefit plan with Regence contains a paragraph explaining its relationship to the Blue Cross and Blue Shield Association. In it is a disclaimer that "[t]his paragraph will not create any additional obligations whatsoever on the part of Regence BlueCross BlueShield of Utah other than those obligations created under other provisions of the Contract." (Doc. No. 29-4 at 80; Regence Plan at 56.) Regence thereby expressly limits its obligations to those in the Patient's benefit plan. Consequently, the variance between First Health and the Defendant-Health Insurance Company's relationship and Blue Shield of California and Regence's relationship is a distinction without a difference.

As a result, the reasoning in St. Vincent applies here. "[While] the [Blue Shield Agreement] is enforceable, it may be enforced only against the parties to that contract." St. Vincent Med. Ctr., 2012 WL 3238510, at *4. It is undisputed that Regence is not a party to the Blue Shield Agreement. Therefore, Sharp cannot enforce the Blue Shield Agreement against Regence.

Because Regence is not a party to the Blue Shield Agreement, Sharp's breach of written contract claim fails as a matter of law. Accordingly, the court enters judgment in favor of Regence and against Sharp on this claim.

**II.    Breach of Implied-in-Law Contract**

Sharp argues Regence breached an implied-in-law contract based on common law and California and Utah statutes. Regence argues the "emergency services" issue is irrelevant because both federal and Utah law permit Regence to deny coverage for services that are excluded under a health plan, even if they are emergency services.

**A.    California Law**

Sharp asserts that California law applies because Regence accessed the Blue Shield Agreement. Blue Shield of California, the Blue Shield Agreement signatory, is regulated by the California Department of Managed Health Care ("DMHC") under the Knox-Keene Health Care Service Plan Act ("Knox-Keene Act").

8

16cv2493 JM (RNB)

Under California law, a health care service plan "shall reimburse providers for emergency services and care provided to its enrollees, until the care results in stabilization of the enrollee, except as provided in subdivision (c)." Cal. Health & Safety Code § 1371.4(b). Subdivision (c) allows emergency services and care to be denied "only if the health care service plan, or its contracting medical providers, reasonably determines that the emergency services and care were never performed." Cal. Health & Safety Code § 1371.4(c). However, as discussed above, Regence is not a party to the Blue Shield Agreement; therefore, it cannot be bound by the choice of law provision therein.

### B. Federal Law and Utah Law

Regence argues that only federal and Utah law apply because of the governing law provision in the Patient's health care plan through Regence. (See Doc. No. 29-4 at 79; Regence Plan at 55 ("The Contract will be governed by and construed in accordance with the laws of the United States of America and by the laws of the State of Utah without regard to its conflict of law rules.").) Regence is implicated in this action because of the Patient's benefit plan. Therefore, the benefit plan's choice of law provision applies.

Under federal law, if a group health plan "provides any benefits with respect to services in an emergency department of a hospital, the plan or issuer must cover emergency services." 20 C.F.R. § 2590.715-2719A(b)(1). A plan subject to this requirement must provide coverage for emergency services "[w]ithout regard to any other term or condition of the coverage, other than [t]he exclusion of or coordination of benefits." 20 C.F.R. § 2590.715-2719A(b)(2)(v)(A) (emphasis added). 45 C.F.R. § 1470138(b) states the same.

The 2010 Utah Code on coverage of emergency medical services, the operative law in Utah at the time Patient presented to Sharp, provides the following:

> (1) A health insurance policy or health maintenance organization contract may not:
>     (a) require any form of preauthorization for treatment of an emergency medical condition until after the insured's condition has been stabilized; or
>     (b) deny a claim for any covered evaluation, covered diagnostic test, or other covered treatment considered medically necessary to stabilize the

9

16cv2493 JM (RNB)

>                emergency medical condition of an insured.
>                           * * *
> (3) For purposes of this section:
>     (a) "emergency medical condition" means a medical condition manifesting itself by acute symptoms of sufficient severity, including severe pain, such that a prudent layperson, who possesses an average knowledge of medicine and health, would reasonably expect the absence of immediate medical attention at a hospital emergency department to result in:
>         (ii) serious impairment to bodily functions; or
>         (iii) serious dysfunction of any bodily organ or part; and
>     (b) "hospital emergency department" means that area of a hospital in which emergency services are provided on a 24-hour-a-day basis.
>                           * * *
> (4) <u>Nothing in this section may be construed as:</u>
>     (a) <u>altering the level or type of benefits that are provided under the terms of a contract or policy.</u>

Utah Code 31A-22-627 (2010) (emphasis added).

Under both federal and Utah law, Sharp would not be able to recover more than is permitted under the Patient's benefit plan, as its exclusions would still apply. Dr. Laurence Cracroft, Sharp's expert, testified "none of this [referring to Patient's prolonged hospitalization] would have occurred had [the Patient] not had the operation." Thus, based on Sharp's own expert, the treatment the Patient received at Sharp is expressly excluded from Regence's plan. That some of the treatment Sharp provided Patient may have constituted emergency care would not change the result.

Additionally, Utah law, like Patient's benefit plan, limits emergency medical services to those provided in a hospital emergency department. Sharp would only be able to recover for emergency services provided that are not excluded under the Patient's benefit plan. Here, Regence has already paid Sharp for the emergency room services provided to Patient. (FAC ¶ 46; Doc. No. 32 at 6.) The court finds, as a matter of law, Sharp is entitled to no more.

Therefore, Regence is entitled to judgment in its favor as a matter of law on Sharp's breach of implied-in-law contract claim.

10

16cv2493 JM (RNB)

## III. Breach of Implied-in-Fact Contract

Sharp's cause of action for breach of implied-in-fact contract is based on Regence's authorization of seven days of treatment and its payment to health care providers for the same treatment.

### A. Regence's Authorization for Seven Days of Inpatient Treatment

On August 29, 2014, Sharp contacted Regence by telephone to request authorization for inpatient services for Patient. When Sharp gave Regence the diagnosis code for pneumonia and sought authorization to provide inpatient treatment, the conversation proceeded as follows:

> REGENCE: So, the length of stay is going to be good for up to seven days, <u>subject to medical necessity and the member's benefit plan</u>.
>
> SHARP: Ok.
>
> REGENCE: We do need to be notified if the member is still in-house on day eight. <u>There's no guarantee of payment</u> and you just want to go ahead and use the member's policy ID number as the reference number.
>
> SHARP: Ok. . . .

(Doc. No. 65-2 at 4 (emphasis added).) While the court doubts that this interaction can serve as a basis for Regence's liability, see <u>Regents of the Univ. of California v. Aetna US Health of California, Inc.</u>, 2011 WL 13227844, at *5 (C.D. Cal. Mar. 15, 2011) ("Other courts have likewise held that insurance companies' verification of coverage and authorizations are not binding contracts to pay . . ."), it would be fair to put this claim to the jury for a determination of whether the parties formed an implied-in-fact contract when Regence authorized seven days of treatment.

#### 1. Express Preemption Under ERISA

However, even if authorizing seven days of treatment created an implied-in-fact contract, that contract was subject to the Patient's benefit plan, and consequently is expressly preempted under the Employee Retirement Income Security Act ("ERISA"). Sharp's breach of implied-in-fact contract claim is based on California law. A state law

11

claim may be subject to "complete preemption"[1] or "express preemption" under ERISA. Regence argues that ERISA expressly preempts Sharp's state law claims, including Sharp's breach of implied-in-fact contract claim.[2]

Express preemption under section 514(a) provides that ERISA shall "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has explained that a "law 'relate[s] to' a covered employee benefit plan for purposes of § 514(a) 'if it [1] has a connection with or [2] reference to such a plan.'" California Div. of Labor Standards Enf't v. Dillingham Const., N.A., Inc., 519 U.S. 316, 324 (1997) (internal quotations omitted; alteration in original). "So long as [the plaintiff's] underlying theory of the case revolves around the denial of benefits, [the plaintiff's] claim falls under ERISA's far-reaching preemption clause." Tingey v. Pixley-Richards W., Inc., 953 F.2d 1124, 1131 n.2 (9th Cir. 1992).

Any oral or implied-in-fact contract created through Regence's authorization was "subject to medical necessity and the member's benefit plan," a condition that Sharp verbally accepted. (Doc. No. 65-2 at 4.) Consequently, determining whether Regence

---

[1] In its motion for summary judgment, Regence argued that all of Sharp's claims are completely preempted under ERISA section 502(a). (Doc. No. 29.) Regence relied on the deposition testimony of Laurel Achenbach, Sharp's Manager of Patient Financial Services. Sharp designated Ms. Achenbach as the person most knowledgeable to testify as to the facts underlying some of Sharp's claims. The court denied the motion, finding that Sharp was not bound by Ms. Achenbach's legal conclusions. (Doc. No. 39.) Regence now asserts that Sharp's claims are preempted under the other strand of ERISA preemption, express preemption under section 514(a).

[2] ERISA applies to any employee benefit plan if it is established or maintained by an employer or an employee organization engaged in commerce or in any industry or activity affecting commerce. 29 U.S.C. § 1003(a). In Regence's motion for summary judgment, Regence laid out how the Patient's health plan with Regence, acquired through her employer, Radiate Media, constitutes an ERISA plan. (Doc. No. 29.) In its opposition brief, Sharp did not dispute or otherwise address Regence's assertion that the Patient's plan with Regence is governed by ERISA. (Doc. No. 32.) Therefore, the court accepts that the Patient's plan is governed by ERISA and does not need to engage in an independent analysis thereof.

breached that implied-in-fact contract would require the jury to evaluate the Patient's ERISA plan, specifically the exclusion contained therein for services rendered for direct complications or consequences arising out of surgery intended to result in weight reduction. "[B]ecause the claim requires interpretation of the ERISA plans, it "relate[s] to" the plans within the meaning of § 1144(a)." Methodist Hosp. of S. California v. Blue Cross of California, 2011 WL 13186107, at *8 (C.D. Cal. Mar. 8, 2011) (internal citation omitted; alterations in original).

Therefore, the court finds it likely that Sharp's breach of implied-in-fact contract claim may be expressly preempted by ERISA because it relates to an ERISA benefit plan. See Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1095 (9th Cir. 1985) ("The Ninth Circuit has held that ERISA preempts common law theories of breach of contract implied in fact . . ."); Cinelli v. Sec. Pac. Corp., 61 F.3d 1437, 1444 (9th Cir. 1995) ("We recognize that ERISA generally preempts common law theories of contract law.").

**B.     Regence's Payment to Health Care Providers for Same Treatment**

Sharp argues that Regence is estopped from relying on the plan exclusion because it paid other health care providers for the services rendered at Sharp, and that those payments created an implied-in-fact contract between Sharp and Regence. According to Sharp, Regence paid for at least twenty-eight other health care provider bills for services rendered to Patient at Sharp between August 28, 2014, and January 7, 2015. Regence asserts that Sharp's argument is contrary to California law.

In California, "[t]he rule is well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom." Manneck v. Lawyers Title Ins. Corp., 28 Cal. App. 4th 1294, 1303 (1994) (quoting Aetna Casualty & Surety Co. v. Richmond, 76 Cal. App. 3d 645, 653 (1977)). Here, Regence's plan expressly excludes treatment of direct complications or consequences arising from surgery intended to result in weight loss. Patient underwent gastric sleeve surgery in Mexico, a procedure that is specifically excluded from coverage

13

under her health plan with Regence. Four days later, she presented to Sharp's emergency room. Sharp's own expert, Dr. Cracroft, testified that the complications Patient experienced "would not have occurred had she not had the operation." Consequently, Sharp claims for breach of implied-in-fact contract and estoppel based on Regence's payments to physicians fail as a matter of law.

**IV.    Common Count—Services Rendered/Quantum Meruit**

Sharp argues that it is entitled to receive more than the discounted rate should the Blue Shield Agreement not apply. "To recover in quantum meruit, a party need not prove the existence of a contract, but it must show the circumstances were such that the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made." Port Med. Wellness, Inc. v. Connecticut Gen. Life Ins. Co., 24 Cal. App. 5th 153, 180 (2018), reh'g denied (June 6, 2018), review filed (July 10, 2018) (internal citations omitted). The elements of quantum meruit are: (1) that the plaintiff performed certain services for the defendant, (2) their reasonable value, (3) <u>that they were rendered at defendant's request</u>, and (4) that they are unpaid. Haggerty v. Warner, 115 Cal. App. 2d 468, 475 (1953) (emphasis added). Regence argues that Sharp must establish that it was acting pursuant to a specific request for services from Regence before it can recover under this theory.

Sharp does not expand on how Regence requested, by words or conduct, that Sharp perform services for Regence's benefit. Regence's authorization of seven days of treatment does not constitute a request by Regence for Sharp to perform services. "In the health insurance context, it is the patient who first requests service in the form of treatment. Then, the provider [Sharp] must seek authorization to provide such treatment from the insurer [Regence]. No reasonable jury could conclude that [Sharp] 'performed services at [Regence's] request,' when in fact [Sharp] initiated contact with [Regence] as to authorization." Cmty. Hosp. of the Monterey Peninsula v. Aetna Life Ins. Co., 119 F. Supp. 3d 1042, 1052 (N.D. Cal. 2015); see also Barlow Respiratory Hosp. v. Cigna Health & Life Ins. Co., 2016 WL 7626446, at *3 (C.D. Cal. Sept. 30, 2016) ("It is undisputed that

14

16cv2493 JM (RNB)

Defendant did not request that Plaintiff provide C.S. with medical services. Rather, C.S. requested medical services from Plaintiff, who then contacted Defendant to verify C.S.'s coverage eligibility. The undisputed facts thus show that Plaintiff cannot establish the third element of its quantum meruit claim." (internal citations omitted)); Summit Estate, Inc. v. Cigna Healthcare of California, Inc., 2017 WL 4517111, at *11 (N.D. Cal. Oct. 10, 2017) ("Even assuming that Defendants verified coverage and authorized Plaintiff to provide substance abuse treatment services through these alleged representations, Plaintiffs have not alleged enough facts to plausibly suggest that Defendants requested Plaintiff to render those services because, as alleged in Plaintiff's complaint, Plaintiff initiated contact with Defendants to verify coverage and seek authorization." (emphasis in original)).

Because Sharp cannot satisfy this element, its common count-services rendered claim fails as matter of law.

## V. Declaratory Relief

Sharp argues that an actual controversy exists relating to what health care services provided by Sharp were emergency services (at what point in time the services Sharp provided were no longer considered emergency services), whether the Patient's policy contains an exclusion that applies to services rendered, and how much Sharp is owed. The court in this order has ruled upon questions of law and, essentially, determined what, if any, claims will be submitted to the jury. That satisfies the court's obligation to provide declaratory relief. The remaining questions are factual in nature for either the court (if they may be determined as a matter of law) or the jury.

///

///

///

## CONCLUSION

For the foregoing reasons, the court grants judgment as a matter of law in favor of Regence and against Sharp on all claims except Sharp's breach of implied-in-fact contract claim based on communications between Regence and Sharp. However, the court notes the likelihood that the breach of implied-in-fact contract claim is expressly preempted by ERISA.[3]

IT IS SO ORDERED.

DATED: August 21, 2018

JEFFREY T. MILLER
United States District Judge

---

[3] During pretrial motions, only complete preemption under ERISA section 502(a) was asserted. In its trial brief, Regence raised express preemption under ERISA section 514(a) for the first time, without Sharp having a full opportunity to brief and argue the new ERISA preemption claim. This matter can be best determined in light of a full evidentiary record.